UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Case No. 3:12-CR-113 JD |
| | ) | |
| HARRY S. KISTE | ) | |

## Opinion and Order

Pending before the Court is a motion filed by Defendant Harry Kiste to dismiss the indictment in this case [DE 31]. The issue is fully briefed and ripe for adjudication [DE 33; DE 34]. For the following reasons, the Court denies the motion to dismiss.

## Background

A complaint was filed on September 14, 2012 [DE 1], alleging that on or about August 30, 2012, Kiste violated 18 U.S.C. § 2250(a) by failing to register as a sex offender in Indiana when he moved to Elkhart, Indiana from Michigan in January 2012 after having been convicted of attempted criminal sexual conduct in the second degree in Cassopolis County, Michigan on October 18, 1996, in violation of M.C.L.A. 750.520c(1)(b) (prohibiting "engag[ing] in sexual contact with another person and . . .[t]hat other person is at least 13 but less than 16 years of age and . . . [t]he actor is a member of the same household as the victim"—a crime that is punishable as a felony with not more than 15 years imprisonment). As a result of the conviction, Kiste was ordered to register as a sex offender for 25 years [DE 1].

An indictment was filed on October 11, 2012 [DE 16] charging Kiste with one count of knowingly failing to register under the Sex Offender Registration and Notification Act ("SORNA"), in violation of 18 U.S.C. § 2250, from on or about January 9 to September 14, 2012. Defense counsel has moved to dismiss the indictment [DE 31] arguing that SORNA is an

unconstitutional exercise of the authority of Congress to regulate commerce under the Commerce Clause. Specifically, Kiste argues that it is not enough that § 2250 invokes the requirement of interstate travel to confer federal jurisdiction because this criminal provision is tied to an independent statute obligating Kiste to register under 42 U.S.C. § 16913—a provision which Kiste argues must be independently valid by being within Congress' power to act under the Commerce Clause. In other words, Kiste argues that the failure to register under § 16913 is a prerequisite to a conviction under § 2250, but because the registration requirement is beyond the power of Congress to enact, there is no valid federal sex offender registration requirement—and as a result, since Kiste was not required to register by any valid federal law, he could not have violated § 2250(a).

As detailed below, the Seventh Circuit has rejected the argument presented by the defense, *see United States v. Vasquez*, 611 F.3d 325, 329-31 (7th Cir. 2010); *United States v. Sanders*, 622 F.3d 779, 782-84 (7th Cir. 2010), and the Supreme Court's holding in *National Federation of Independent Business v. Sebelius*, 132 S.Ct. 2566 (2012) ("*NFIB*") does not abrogate this applicable circuit precedent.

## Analysis

Congress enacted SORNA in 2006, which imposes a registration requirement on sex offenders, 42 U.S.C. § 16913, and a criminal penalty for failure to comply with the registration requirement, 18 U.S.C. § 2250. 18 U.S.C. § 2250 states in relevant part:

> (a) In general.--Whoever--
> (1) is required to register under the Sex Offender Registration and Notification Act;
> (2)  (A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or

2

> (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and
>
> (3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;
>
> shall be fined under this title or imprisoned not more than 10 years, or both.

A "sex offender" is defined as any individual who is convicted of a "sex offense" under either state or federal law. 42 U.S.C. § 16911(1). A "sex offense" means a criminal offense that has an element involving a sexual act or sexual contact with another or a criminal offense that is a specified offense against a minor, or an attempt or conspiracy to commit one of the above. 42 U.S.C. § 16911(5)(A). Pursuant to SORNA, "[a] sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 42 U.S.C. § 16913(a). A sex offender must update his registration within three business days of a "change of name, residence, employment, or student status." 42 U.S.C. § 16913(c).

In order for Kiste to be convicted of a violation under 18 U.S.C. § 2250, the government must prove each of the following elements beyond a reasonable doubt: (1) the defendant was required to register under SORNA; (2) the defendant knowingly failed to register/update his registration as required by SORNA; and (3) the defendant traveled in interstate or foreign commerce after failing to register/update his registration. *See* 7th Circuit Pattern Jury Instructions, Rev. 2012, at page 578. The interstate or foreign commerce travel element is satisfied by proof that the defendant has traveled from one state to another state or to a foreign country after having been convicted of a qualifying "sex offense." *See* 42 U.S.C. § 16911(5). The interstate or foreign travel may not precede the registration requirement. *See Carr v. United States*, 130 S.Ct. 2229 (2010); *United States v. Rappe*, 614 F.3d 332 (7th Cir. 2010) (SORNA

became effective on February 28, 2007).

Kiste argues that SORNA violates the Commerce Clause because the registration requirement under § 16913 is triggered without regard to whether the sex offender traveled across state lines and because it essentially regulates inactivity (i.e. the failure to register) and compels sex offenders to become active by registering, contrary to the United States Supreme Court's recent decision in *NFIB*.

Relative to Kiste's argument that § 16913 improperly lacks any interstate commerce element, the Seventh Circuit has spoken on this 'nexus' argument and rejected it. Similar to Kiste, the defendants in *Vasquez* and *Sanders*, contended that because "Congress does not have the power to impose registration requirements on individual citizens convicted of purely intrastate offenses," the sweeping registration requirement imposed by § 16913 exceeds Congress' authority under the Commerce Clause. *Sanders,* 622 F.3d at 782 (citing *Vasquez*, 611 F.3d at 329). However, the Seventh Circuit emphasized that it is § 2250 which attaches criminal penalties to the failure to comply with § 16913, and only where an individual either has been convicted of a federal sex offense or has traveled in interstate commerce does he violate § 2250 for the failure to register. *Id*. (citing *Vasquez*, 611 F.3d at 330). Thus, those persons who have been convicted of state sex offenses do not violate § 2250 for the failure to register unless they cross state lines, thereby becoming "instrumentalities" of interstate commerce making use of the interstate transportation routes which are the "channels" of such commerce. *Id*. SORNA thus defines the crime of failing to register in such a way that "the use of the channels and instrumentalities of interstate commerce is necessarily part of the commission of the targeted offense." *Id*.

The Seventh Circuit further recognized that § 2250 cannot be isolated from the provisions of SORNA; "it is embedded in a broader statutory scheme enacted to address the deficiencies in prior law that had enabled sex offenders to slip through the cracks." *Sanders,* 622 F.3d at 783 (citing *Carr,* 130 S.Ct. at 2240). Conversely, § 16913 cannot be divorced from § 2250 in evaluating whether the Commerce Clause gives Congress the authority to require anyone convicted of a sex offense to register. *Id*. Imposing a duty to register as a matter of federal law would do little to solve the problem of sex offenders slipping through the cracks absent the enforcement mechanism supplied by § 2250. *Id*. Interstate travel by a sex offender is not merely a jurisdictional hook but a critical part of the problem that Congress was attempting to solve, for whenever sex offenders cross state lines they tend to evade the ability of any individual state to track them and thereby "threaten the efficacy of the statutory scheme . . .". *Id*. (quoting *Carr*, 130 S.Ct. at 2239). In short, the obligation to register and the criminal penalties imposed on those who cross state lines without complying with their registration obligations are "inextricably intertwined." *Id*. (citing *Vasquez*, 611 F.3d at 330; *United States v. Guzman*, 591 F.3d 83, 90 (2d Cir. 2010); *United States v. Whaley*, 577 F.3d 254, 259-60 (5th Cir. 2009); *United States v. Ambert*, 561 F.3d 1202, 1212 (11th Cir. 2009); *United States v. Howell*, 552 F.3d 709, 716-17 (8th Cir. 2009)); *Vasquez*, 611 F.3d at 331 ("§ 16913 is a logical way to help ensure that the government will more effectively be able to track sex offenders when they do cross state lines.").

Thus, as held in *Sanders*, § 2250, which gives teeth to § 16913's registration requirement, ensures that state sex offenders are penalized for the failure to register only when they move in interstate commerce. *Sanders*, 622 F.3d at 783. And, to the extent that § 16913 requires a state sex offender to register irrespective of whether he engages in interstate travel, it may be seen

5

under the Necessary and Proper Clause, U.S. Const. art. I, § 8, cl. 18, as "an appropriate aid" to the tracking of those offenders who do cross state lines and thereby bring themselves within the reach of Congress' authority under the Commerce Clause. *Id.* (citing *Vasquez*, 611 F.3d at 330-31 (quoting *Howell*, 552 F.3d at 715); *Guzman*, 591 F.3d at 91; *Ambert*, 561 F.3d at 1211-12; *Whaley*, 577 F.3d at 260-61); *see United States v. Kendrick*, 647 F.3d 732, 734 (7th Cir. 2011) ("In light of our recent decisions in *Vasquez* and *Sanders*, we hold that SORNA's registration requirements do not exceed Congress' authority under the Commerce Clause"). In accordance with this circuit precedent, the Court rejects the argument that § 16913 lacks any interstate commerce element and is therefore invalid.

Kiste further argues that the United States Supreme Court's recent decision in *NFIB* can be extended to support his contention that SORNA is unconstitutional under Congress' Commerce Clause power. The Court disagrees, noting that the Seventh Circuit has yet to apply *NFIB* to this specific inquiry.

The relevant issue before the Supreme Court in *NFIB* was whether Congress had the power under Article I of the Constitution to enact a provision in the Patient Protection and Affordable Care Act requiring non-exempted federal income taxpayers to maintain a minimum level of health insurance or otherwise pay a tax penalty. 132 S.Ct. at 2580, 2585–593. Chief Justice Roberts wrote the opinion of the Court upholding the minimum coverage provision under the taxing power, which was joined by Justices Ginsburg, Breyer, Sotomayor, and Kagan. *Id.* at 2594–95. Five justices separately concluded that the minimum coverage provision was not authorized by Congress' commerce power; however, no single opinion was joined by a majority of the Court. *See id.* at 2585–93 (Roberts, C.J.); *id.* at 2642–50 (Scalia, Kennedy, Thomas, Alito,

JJ., dissenting). Chief Justice Roberts' separate opinion expressed the view that Congress could not require individuals to purchase health insurance under its commerce power because the Commerce Clause only gives Congress the power to regulate commerce, not to compel it. *Id.* at 2585–93. According to Chief Justice Roberts, the minimum coverage provision did not regulate existing commercial activity—rather, it attempted to compel individuals to become active in commerce (by purchasing a product), on the ground that the failure to purchase health insurance (or inaction) affects interstate commerce. *Id.* Chief Justice Roberts, however, only wrote for himself on this issue. In a separate joint dissent, Justices Scalia, Kennedy, Thomas, and Alito agreed that the Commerce Clause did not authorize Congress to compel entry into commerce in order to regulate it. *Id.* at 2642–50. The dissenters did not join any portion of Chief Justice Roberts' opinion, nor did they agree to the judgment of the Court. *Id.* at 2642–77.

As a few courts have recently noted, there has been considerable debate on whether the Chief Justice's Commerce Clause discussion is dicta or binding precedent.[1] *See e.g., United States v. Henry*, 688 F.3d 637, 641 n.5 (9th Cir. 2012) (citation omitted); *Spann*, 2012 WL 4341799 at *3 (citing cases). If viewed as dicta, that is, if the conglomeration of the dissenting opinions of four Justices combined with the opinion of Chief Justice John Roberts does not constitute binding precedent, then *NFIB* provides little support to Kiste's motion. *See e.g.,*

---

[1]Chief Justice Roberts indicated that his analysis of the individual mandate under the Commerce Clause was necessary to his finding that the mandate was a constitutional exercise of Congress' separate congressional power to tax because "the statute reads more naturally as a command to buy insurance than as a tax." *United States v. Spann*, No. 3:12-CR-126-L, 2012 WL 4341799 *2 n.2 (N.D.Tex. Sept. 24, 2012) (citing *NFIB*, 132 S.Ct. at 2600-01). Because the Commerce Clause did not authorize such a command and because the Court had a duty to construe a statute in a manner necessary to save it, Chief Justice Roberts adopted a saving construction by interpreting the mandate as a tax. *Id.* Justice Ginsburg, joined by Justices Breyer, Sotomayor, and Kagan, criticized the Chief Justice for "undertak[ing] a Commerce Clause analysis that [wa]s not outcome determinative." *Id.* (citing *NFIB*, 132 S.Ct. at 2629 n.12). Because the Court ultimately upheld the individual mandate as a proper exercise of Congress' power to tax, Justice Ginsburg expressed that this made the "Chief Justice's Commerce Clause essay all the more puzzling." *Id.* (citing *NFIB*, 132 S.Ct. at 2629).

7

*Spann,* 2012 WL 4341799 at *2-3 (criticizing the application of the narrowest grounds doctrine enunciated in the *Marks v. United States*, 430 U.S. 188 (1997) to *NFIB*). However, assuming *NFIB* has in fact changed the authority of Congress under the Commerce Clause, can *NFIB* be extended to render SORNA unconstitutional?

In this respect, the Court is aware of three decisions involving similar charges and post-dating *NFIB* which have specifically addressed whether § 16913 violates the Commerce Clause.[2] *See United States v. Loudner*, No. CR 12-30144-RAL, 2013 WL 357494 (D.S.D. Jan. 29, 2013); *United States v. Lott*, No. 2:11-cr-097, 2012 WL 6107676 (D.Vt. Dec. 10, 2012); *United States v. Moore*, No. CR-12-6023-RMP, 2012 WL 3780343 (E.D.Wash. Aug. 31, 2012). In considering the constitutionality of SORNA after *NFIB*, these courts applied the narrowest grounds doctrine to *NFIB* as endorsed by the Supreme Court in *Marks*. *Loudner*, 2013 WL 357494 at *4-5; *Lott*, 2012 WL 6107676 at *5-7; *Moore*, 2012 WL 3780343 at *3. In short, the narrowest grounds doctrine indicates: "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *United States v. Heron,* 564 F.3d 879, 884 (7th Cir. 2009) (quoting *Marks*, 430 U.S. at 193) (internal quotation marks omitted). However, in order for the *Marks* rule to help discern what principle the fragmented decision establishes, there must be a "common

---

[2]Not at issue is whether Kiste can be convicted of an offense under 18 U.S.C. § 2250(a)(2)(A) for failing to register under SORNA as a sex offender by reason of a federal sex offense conviction. *See e.g., United States v. Shoulder*, 696 F.3d 922 (9th Cir. 2012) (upholding the constitutionality of SORNA under the Necessary and Proper Clause and noting that at issue was whether Congress had the authority to impose SORNA registration requirements on individuals who were convicted of federal sex crimes, without considering whether SORNA's registration requirements on sex offenders convicted under state law exceeded Congress' power under the Commerce Clause); *United States v. Kebodeaux,* 687 F.3d 232 (5th Cir. 2012) (holding that § 16913's registration requirements and § 2250(a)(2)(A)'s criminal penalties for failing to register after intrastate relocation are unconstitutional "solely as they apply to former federal sex offenders who had been unconditionally released from federal custody before SORNA's passage in 2006").

denominator" for the judgment.[3] *Id*. (citations omitted). The district court judges concluded that Chief Justice Roberts articulated the narrowest grounds for purposes of the Court's Commerce Clause analysis—that is, Congress cannot force individuals into commerce precisely because they elected to refrain from activity. *Loudner*, 2013 WL 357494 at *4; *Lott*, 2012 WL 6107676 at *4-8 (explaining best how Chief Justice Roberts' opinion in *NFIB* might be taken); *Moore*, 2012 WL 3780343 at *3. Ultimately, the courts all upheld § 16913. *Id.*

Similarly, the Court does not read *NFIB* to undermine the validity of SORNA or the Seventh Circuit's opinions in *Vasquez* and *Sanders*. *NFIB* provides little guidance as to how lower courts should distinguish between activity or inactivity or between regulating activity and compelling it. This Court cannot say that SORNA is an effort to regulate inactivity—while § 2250 imposes criminal penalties for the failure to register under § 16913, in Kiste's case, it does so only after he engaged in the activities of committing a qualifying sex offense and traveling interstate. *See e.g., Carr,* 130 S.Ct. at 2240 ("[t]he *act* of travel by a convicted sex offender may serve as a jurisdictional predicate for § 2250, but it is also, . . . the very *conduct* at which Congress took aim") (emphasis added). In other words, Congress is not regulating this group of individuals because they did nothing. Sex offenders are being regulated because they in fact engaged in past conduct that justified the requirement that they register. Moreover, relative to SORNA, Congress certainly does not compel defendants such as Kiste to become active in

---

[3]The Seventh Circuit would seemingly support a lower court's examination of plurality, concurring, and dissenting opinions in order to extract the principles that a majority of a higher court has embraced. *See e.g., United States v. Dixon*, 687 F.3d 356, 359-60 (7th Cir. 2012) (analyzing the plurality, concurrence, and dissent in *Freeman v. United States*, 131 S.Ct. 2685 (2011)); *United States v. Gerke Excavating, Inc.*, 464 F.3d 723 (7th Cir. 2006) (analyzing the plurality, concurring, and dissenting opinions in *Rapanos v. United States*, 547 U.S. 715 (2006)); *United States v. Torres-Ramirez,* 213 F.3d 978, 982 (7th Cir. 2000) (relying on *Marks* to analyze the lead opinion, Judge Rovner's concurring opinion, and the dissenting opinion to establish the holding of *United States v. Lechuga*, 994 F.2d 346 (7th Cir. 1993)); *see also Heron,* 564 F.3d at 885 ("it is risky to assume that the Court has announced any particular rule of law, since the plurality and dissent approaches garnered only four votes each").

commerce (by crossing state lines), whereas the individual mandate in *NFIB* compelled individuals to become active in commerce (by purchasing insurance). *See e.g., Carr,* 130 S.Ct. at 2241 ("[w]e have little reason to doubt that Congress intended § 2250 to do exactly what it says: to subject to federal prosecution sex offenders who elude SORNA's registration requirements *by traveling in interstate commerce*.") (emphasis added). Thus, even assuming that the "activity vs. inactivity" distinction or the inability to "compel entry into commerce" is now part of the Commerce Clause doctrine given *NFIB*, the Court concludes that it has no application here where the statute in question—SORNA—does not regulate inactivity, nor does it involve the regulation of commerce by compelling its existence.

Moreover, despite any application *NFIB* may have, *Vasquez* and *Sanders* were not abrogated or overruled by *NFIB* and therefore remain binding authority in the Seventh Circuit which this Court must follow. The Court finds, consistent with *Vasquez* and *Sanders*, that the congressional authority to enact SORNA is authorized by Article I, Section 8.

## Conclusion

Accordingly, the Court **DENIES** the Defendant's motion to dismiss the indictment [DE 31].

SO ORDERED.

ENTERED:   February 13, 2013

                                    /s/ JON E. DEGUILIO
                                Judge
                                United States District Court